# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　Plaintiff,<br><br>vs.<br><br>LESTER JEFFERSON,<br><br>　　　　Defendant. | No. CR05-2011<br><br>**ORDER** |

_____

**TABLE OF CONTENTS**

I.  PROCEDURAL BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II. ANALYSIS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
　　A.  Factual Findings . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
　　B.  Legal Conclusions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
　　　　1. Expectation of Privacy . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
　　　　2. Abandonment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
　　　　3. Exigent Circumstances . . . . . . . . . . . . . . . . . . . . . . . . . . 7
　　　　4. Plain View . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
　　　　5. Good Faith and Reasonableness . . . . . . . . . . . . . . . . . . . 9

III. CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

The matter before the court is Defendant Lester Jefferson's Motion to Suppress (docket no. 15). The Motion is resisted.

## *I. PROCEDURAL BACKGROUND*

On April 22, 2005, the grand jury returned an Indictment charging Defendant with committing the crime of knowingly possessing in and affecting interstate commerce a firearm and ammunition after previously having been convicted of crimes punishable by imprisonment for a term exceeding one year and having three previous convictions for

violent felonies and a serious drug offense.

On July 1, 2005, Defendant filed his Motion to Suppress, asking the court to suppress evidence law enforcement found a firearm under a van's front passenger tire and any oral and written statements Defendant made following the seizure of the firearm.[1]

On July 8, 2005, the government resisted Defendant's Motion, contending: (1) Defendant has shown no reasonable expectation of privacy sufficient to challenge the firearm's seizure; (2) Defendant abandoned the firearm; (3) the firearm was seized in plain view; (4) exigent circumstances and public safety justified seizure of the firearm; and (5) the officers acted in good faith and reasonably in seizing the firearm.

The court held a hearing on the Motion on July 8, 2005. Defendant was personally present with his attorney, Michael Lindeman. Assistant United States Attorney Robert Teig represented the government. At that time, the court orally denied Defendant's Motion to Suppress and indicated this written ruling would follow.

## II. ANALYSIS

### A. Factual Findings

The undisputed testimony of Sergeant Frank Krogh of the Waterloo (Iowa) Police Department was that in the early morning hours of December 26, 2004 (approximately 2:30 a.m.), the Waterloo Police Department received a call regarding a fight with shots fired at 431 Florence Street, Waterloo. Sergeant Krogh and other officers were dispatched to the scene and Sergeant Krogh arrived first. He saw Defendant and DeMarco Harris walking out of the driveway of 431 Florence Street, followed by Orlando Fisher and a black female. Fisher had a baseball bat in his hand. Sergeant Krogh ordered Fisher to drop the bat, which he did. Fisher then pointed at Defendant and Harris and started

---

[1] The court has been presented with no evidence regarding what statements, if any, Defendant made to law enforcement following seizure of the firearm.

2

screaming that Defendant had a gun. Sergeant Krogh ordered Defendant and Harris, who were now heading north on Florence, away from Sergeant Krogh, to stop walking. Harris slowed down and eventually stopped. Defendant continued to walk, looked back at Sergeant Krogh and then walked up the driveway of the property located at 437 Florence Street. The driveway, wide enough for two vehicles, was surrounded on three sides by a chain link fence. Sergeant Krogh drew his gun and ordered Defendant to stop. Defendant continued around the front of a car and came around the other side of a van. At that time, other officers pulled up in front of the driveway and ordered Defendant to come out of the driveway. Sergeant Krogh took Harris into custody and informed Harris he was not under arrest. Harris stated there had been a fight and he had been hit. Sergeant Krogh then walked over to where Defendant was standing and saw Defendant's footprints in the snow, the only footprints on the driveway. Sergeant Krogh followed the footprints up the driveway until he found a firearm lying underneath the van behind the front passenger-side tire. Sergeant Krogh subsequently learned no shots had actually been fired.

### *B. Legal Conclusions*

At the hearing on Defendant's Motion to Suppress, the court relied on several alternative bases in support of its ruling in favor of the government. First, the court found Defendant had no standing to challenge the seizure because he had no expectation of privacy in the premises where the firearm was found. Second, the court determined Defendant abandoned the firearm. Third, the court determined exigent circumstances justified seizure of the firearm out of concern for Sergeant Krogh's and others' safety. Fourth, the court found Sergeant Krogh seized the firearm in plain view. Fifth, the court determined Sergeant Krogh acted reasonably in seizing the firearm. The court sets forth more detailed analysis of each basis below.

### *1. Expectation of Privacy*

Defendant contends he had an expectation of privacy in the property where a firearm was hidden under a van on a driveway. Defendant admits he had no ownership interest in the van, the driveway, or the property on which the van and driveway were located. Rather, he contends the firearm was near enough to his person that he retained a privacy interest in the firearm.

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. However, "[t]he Fourth Amendment protects people and not places." *United States v. Hill*, 393 F.3d 839, 840 (8th Cir. 2005). "What a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection. . . . But what he seeks to preserve as private, even in an area accessible to the public, may be constitutionally protected." *Katz v. United States*, 389 U.S. 347, 351 (1967). "When examining if a search is reasonable, courts consider 'all the circumstances of the particular governmental invasion of a citizen's personal security.'" *United States v. Mendoza*, 281 F.3d 712, 714 (8th Cir. 2002) (quoting *Terry v. Ohio*, 392 U.S. 1, 19 (1968)). "'The person challenging the search has the burden of showing both a subjective expectation of privacy and that the expectation is objectively reasonable; that is, one that society is willing to accept.'" *Id.* (quoting *United States v. McCaster*, 193 F.3d 930, 933 (8th Cir. 1999)). The court must consider several factors in deciding whether the challenger has an objectively reasonable expectation of privacy in the location searched: "'whether the party has a possessory interest in the things seized or the place searched; whether the party can exclude others from that place; whether the party took precautions to maintain the privacy; and whether the party had a key to the premises.'" *Id.* (quoting *McCaster*, 193 F.3d at 933).

In this case, Defendant did not present any evidence he had a subjective expectation of privacy in the space beneath a van he did not own, on a driveway he did not own, located on property he did not own. As to the factors regarding an objective expectation of privacy, it is undisputed Defendant has no possessory interest in the driveway or the van under which the firearm was seized. It is further undisputed Defendant has no right to exclude others from the driveway or from underneath the van. Defendant took no precautions to maintain any privacy interest in the firearm by placing it in a location in which he had no reasonable expectation of privacy out in the open rather than, for example, placing it in a locked gun safe in his home. The final factor, whether the party had a key to the premises, does not apply in this case, where the location searched and property seized were outdoors. Therefore, the court finds Defendant has failed to establish either that he had a subjective expectation of privacy or that any expectation he might have had is objectively reasonable. Because Defendant has not demonstrated he had a reasonable expectation of privacy, he lacks standing to challenge the seizure of the firearm. *See United States v. Brown*, 408 F.3d 1049, 1051 (8th Cir. 2005) (holding the defendant did not have standing to challenge the search of a residence where there was no evidence the defendant had a reasonable expectation of privacy in the residence). Suppression, therefore, is inappropriate.

### 2. Abandonment

Defendant does not argue he did not abandon the firearm. A warrantless search and seizure of abandoned property does not constitute an unreasonable search and seizure and thus does not violate the Fourth Amendment. *See Abel v. United States*, 362 U.S. 217, 241 (1960); *United States v. Sanders*, 130 F.3d 1316, 1317 (8th Cir. 1997) (ruling that because the Fourth Amendment's protection extends only to those who have a legitimate expectation of privacy in property at the time it is searched, a warrantless search of

abandoned property is not unreasonable and does not violate the constitution). "This is because '[w]hen individuals voluntarily abandon property, they forfeit any expectation of privacy in it that they might have had.'" *United States v. Segars*, 31 F.3d 655, 658 (8th Cir. 1994) (quoting *United States v. Jones*, 707 F.2d 1169, 1172 (10th Cir. 1983)). Abandonment is an ultimate fact or conclusion based generally upon a combination of act and intent. "Intent may be inferred from words spoken, acts done, and other objective facts, and all the relevant circumstances at the time of the alleged abandonment should be considered." *United States v. Hoey*, 983 F.2d 890, 892 (8th Cir. 1993) (citations omitted). "The issue is not abandonment in the strict property right sense, but rather, whether the defendant in leaving the property had relinquished his reasonable expectation of privacy so that the search and seizure is valid." *Id.* (citations omitted). "Whether an abandonment has occurred is determined on the basis of objective facts available to the investigating officers, not on the basis of the owner's subjective intent." *United States v. Tugwell*, 125 F.3d 600, 602 (8th Cir. 1997). "In determining whether property has been abandoned for Fourth Amendment purposes, the court must look to the totality of the circumstances, noting in particular two factors: whether the suspect denied ownership of the property and whether he physically relinquished the property." *United States v. Liu*, 180 F.3d 957, 960 (8th Cir. 1999) (citing *United States v. Landry*, 154 F.3d 897, 899 (8th Cir. 1998)).

    In this case, the facts known to Sergeant Krogh at the time he seized the firearm indicated to him the firearm had been abandoned. Defendant had physically relinquished the item. Although there is no evidence Defendant explicitly denied ownership, that is not fatal to the determination the firearm was abandoned. *See id.* ("It is without dispute that Liu never verbally denied ownership of his bag; indeed, he affirmed his ownership more than once. But he nevertheless may have abandoned the bag by physical relinquishment,

6

even while claiming ownership, since a verbal disclaimer of ownership is not required for a finding of abandonment."). This is not a case in which Defendant gave his firearm to someone and asked the person to store it for safekeeping, thus retaining a privacy interest in the firearm. *See United States v. James*, 353 F.3d 606, 616 (8th Cir. 2003) ("We are convinced that a person does not abandon his property merely because he gives it to someone else to store.") (citing *United States v. Basinski*, 226 F.3d 829, 837 (7th Cir. 2000)). The firearm was objectively abandoned and suppression, therefore, is inappropriate.

### 3. *Exigent Circumstances*

Defendant does not argue the officers were not entitled to seize the firearm under the exigent circumstances exception to the warrant requirement. "The Fourth Amendment protects the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. However, "[t]he Fourth Amendment does not require police officers to delay in the course of an investigation if to do so would gravely endanger their lives or the lives of others." *Warden v. Hayden*, 387 U.S. 294, 298-99 (1967). The Eighth Circuit Court of Appeals has determined "a warrantless seizure of a weapon may be considered 'reasonable' within the Fourth Amendment when justified by an officer's legitimate concern for someone's safety." *United States v. Antwine*, 873 F.2d 1144, 1147 (8th Cir. 1989) (discussing *New York v. Quarles*, 467 U.S. 649 (1984)). "This reading of *Quarles* is in accord with [the Eighth Circuit Court of Appeals'] long-held view that legitimate concern for the safety of individuals may constitute 'exigent circumstances' justifying warrantless . . . searches." *Id.*; *see also United States v. Wells*, 702 F.2d 141, 144 (8th Cir. 1983) (holding a police officer was justified in seizing without a warrant a paper bag containing a gun from the floor of a tavern to protect himself and other patrons). Sergeant Krogh was entitled to

7

seize the firearm left lying on the ground in the open for his own and others' safety even in the absence of a warrant. Therefore, suppression of the firearm is inappropriate.

### 4. Plain View

Defendant alleges the firearm, hidden under the front passenger-side tire of a van on a driveway, was not seized in plain view. Under the plain view doctrine, "if police are lawfully in a position from which they view an object, if its incriminating character is immediately apparent, and if the officers have a lawful right of access to the object, they may seize it without a warrant." *Minnesota v. Dickerson*, 508 U.S. 366, 375 (1993); *United States v. Gillon*, 348 F.3d 755, 759 (8th Cir. 2003), *cert. denied,* 541 U.S. 968 (2004). "The 'immediately apparent' requirement means that officers must have 'probable cause to associate the property with criminal activity.'" *United States v. Hatten*, 68 F.3d 257, 261 (8th Cir. 1995) (quoting *United States v. Garner*, 907 F.2d 60, 62 (8th Cir. 1990)). "Probable cause exists where there is a fair probability that contraband or evidence of a crime will be found in [a] particular place." *United States v. Gleich*, 397 F.3d 608, 612 (8th Cir. 2005) (citing *United States v. Oropesa*, 316 F.3d 762, 768 (8th Cir. 2003)). In order to determine whether probable cause exists, the court looks to the totality of the circumstances. *Id.* (citing *Oropesa*, 316 F.3d at 768). "Courts should apply a common sense approach and, considering all relevant circumstances, determine whether probable cause exists." *Id.* (citing *United States v. Buchanan*, 167 F.3d 1207, 1211 (8th Cir. 1999)).

First, when Sergeant Krogh approached the van, he was lawfully in a position from which to view the firearm. *See Katz*, 389 U.S. at 351 ("What a person knowingly exposes to the public . . . is not a subject of Fourth Amendment protection."). Second, the court already determined Sergeant Krogh had a lawful right of access to the object out of a concern for public safety. Finally, the court finds Sergeant Krogh had probable cause to

associate the firearm with criminal activity. Sergeant Krogh was dispatched to the scene because the police station had received a call regarding a fight with shots fired. Fisher, after dropping a bat at Sergeant Krogh's command, started screaming that Defendant had a gun. Defendant did not stop when ordered to do so. Sergeant Krogh observed Defendant walk up the driveway, around a van, and back down the driveway. No one else was near the van at the time. Sergeant Krogh saw Defendant's footprints in the snow, the only footprints on the driveway, and followed the footprints up to the van, where Sergeant Krogh found the firearm lying underneath the van behind the front passenger-side tire. Thus, Sergeant Krogh had probable cause to associate the firearm with criminal activity and lawfully could seize the firearm found in plain view. Suppression is not appropriate in such circumstances.

### 5. *Good Faith and Reasonableness*

Finally, the government offers the alternative rationales that Sergeant Krogh acted in good faith and reasonably in seizing the firearm. A police officer's "good faith" is relevant only when the officer relied on a warrant subsequently determined to be invalid. "[O]ur good-faith inquiry is confined to the objectively ascertainable question whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization. *United States v. Leon*, 468 U.S. 897, 922 n.23. (1984). "'[A]bsent allegations that the [issuing judge] was not neutral, "suppression is appropriate only if the officers were dishonest or reckless in preparing their affidavit or could not have harbored an objectively reasonable belief in the existence of probable cause."'" *United States v. Terry*, 305 F.3d 818, 823 (8th Cir. 2002) (alterations in original) (quoting *United States v. Fulgham*, 143 F.3d 399, 401 (8th Cir. 1998) (in turn quoting *Leon*, 468 U.S. at 926)). No warrant, valid or invalid, was issued in this case. Thus, the good faith exception to the warrant requirement does not apply.

The court finds, however, Sergeant Krogh acted reasonably in seizing the firearm. The court previously found exigent circumstances – public safety – existed which allowed Sergeant Krogh to seize the firearm without a warrant. Clearly, Sergeant Krogh's seizure of the firearm was reasonable under the circumstances. *See Antwine*, 873 F.2d at 1147 (holding "a warrantless seizure of a weapon may be considered 'reasonable' within the Fourth Amendment when justified by an officer's legitimate concern for someone's safety"). Therefore, again the court concludes suppression is inappropriate under the circumstances.

### *III. CONCLUSION*

For the foregoing reasons, **IT IS HEREBY ORDERED**:

(1) Defendant's Motion to Suppress (docket no. 15) is DENIED.

(2) The period between the filing of Defendant's Motion and this Order is excluded from calculation under the Speedy Trial Act. 18 U.S.C. § 3161(h)(1)(F) (excluding delay resulting from the filing of any pretrial motion through the conclusion of the hearing thereon); 18 U.S.C. § 3161(h)(1)(J) (excluding "delay reasonably attributable to any period, not to exceed thirty days, during which any proceeding concerning the defendant is actually under advisement by the court").

**SO ORDERED.**

**DATED** this 14th day of July, 2005.

_____
LINDA R. READE
JUDGE, U. S. DISTRICT COURT
NORTHERN DISTRICT OF IOWA